UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

PIANO GALLERY MADISON, LLC,

    Plaintiff,

  v.

CREATE MUSIC, LLC,
BENJAMIN GARBER, and
DEBRA GALLA,

    Defendants.

Case No. 17-cv-713

## COMPLAINT

NOW COMES Plaintiff Piano Gallery Madison, LLC, by its attorneys Laffey, Leitner & Goode LLC, and in support of its Complaint against defendants Create Music LLC, Benjamin Garber, and Debra Galla asserts and alleges as follows:

### THE PARTIES

1. Plaintiff Piano Gallery Madison, LLC ("PGM") is a foreign limited liability company with its principal office at 28751 South Tamiami Trail in the City of Bonita Springs in Lee County, Florida. PGM's managing member is Grant Billings ("Grant").

2. Defendant Create Music, LLC ("CM") is a domestic limited liability company with its principal office at 6629 Mineral Point Road in the City of Madison in Dane County, Wisconsin; CM's registered agent is Benjamin Garber ("Garber"). Upon information and belief, Garber serves as CM's managing member.

3. Benjamin Garber is an adult domiciled in Wisconsin who resides at 714 Cone Flower Street in the City of Middleton in Dane County, Wisconsin.

4. Debra Galla ("Galla") is an adult domiciled in Wisconsin who resides at 423 Pheasant Court in the Village of Deerfield in Dane County, Wisconsin. Galla was once employed as PGM's Office Manager and now works in that capacity for CM.

## JURISDICTION AND VENUE

5. This court has jurisdiction over the defendants pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties, who are residents of different states, and the matter in controversy exceeds the value of $75,000, exclusive of costs or interest, as set forth in further detail below.

6. The United States District Court for the Western District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), as all defendants reside in, and all relevant acts and omissions giving rise to plaintiff's claims took place in, that judicial district.

## COMMON FACTS

7. The Billings Family, through grandfather Zeb, son Greg, and grandson Grant, has been selling pianos in Wisconsin since 1957 under the name Billings Pianos & Organs.

8. In 1996, the Billings Family obtained the right to sell and distribute pianos made by Steinway & Sons ("Steinway") when Steinway appointed Greg Billings to open a gallery store in Naples, Florida.

9. Grant formed PGM in July 2007 and opened his own Steinway gallery store in Madison, Wisconsin. PGM did business in Madison under the trade name "Billing Piano Gallery," which name Grant purposefully used given the associated trade value of his family's name in the retail piano industry.

10. Grant owned and operated PGM d/b/a Billings Piano Gallery for approximately seven years. In early June 2014, Grant decided to move to Florida to succeed his father in running the Steinway gallery store in Naples.

11. Upon hearing of the move, Garber, then a PGM employee, expressed interest in buying Grant's business and retaining Galla as his Office Manager. To facilitate the transaction, Garber restored a then delinquent CM to good standing with the Wisconsin Department of Financial Institutions on June 10, 2014.

12. In July 2014, Garber started attending some Steinway-sponsored events to raise his profile and visibility with the manufacturer. Interesting in selling the Madison store to his employee, Grant met with his contacts at Steinway to recommend that they consider letting Garber take over the Madison dealership.

13. Toward the end of the summer and into the fall of 2014, Grant and Garber began negotiating the terms of an agreement by which CM would purchase PGM's business and assets.

14. CM's attorney, Mark Goldstein of the Goldstein Law Group, prepared an Asset Purchase Agreement, which PGM then negotiated through its attorney, Steven Tumbush of Murphy Desmond. Ultimately, CM and PGM signed the Asset Purchase Agreement ("APA") attached to this Complaint as **Exhibit 1**, the terms and conditions of which are adopted and incorporated herein by reference.

15. The APA has an effective date of October 15, 2014 despite the fact that it was actually signed later that month.

## FIRST CLAIM FOR RELIEF
### Breach of Contract by Create Music, LLC

16. Plaintiff adopts and incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

17. In October 2014, PGM offered to sell its business and assets to CM; in consideration of PGM's offer, CM paid PGM a purchase price of $409,932.73.

18. The offer and consideration were accepted, and the parties entered into a contract, the terms of which are set forth in the APA attached hereto as **Exhibit 1**; PGM has performed all conditions precedent to require CM's performance under the APA.

19. CM breached the contract in multiple ways, including, without limitation, as follows:

    a. CM retained certain assets that were the property of PGM as described in Section 1.3 of the APA and/or related accounts receivable that were to be paid pursuant to Section 6.3 of the APA;

    b. CM failed to reimburse PGM for liabilities CM agreed to assume pursuant to Sections 2.1 and 2.4 of the APA;

    c. CM did not meet the agreed-upon deadline of October 24, 2015 for opening a line of credit with GE as specified in Section 6.5 of the APA and then refused to reimburse PGM for related interest charges related or pay PGM pursuant to Section 3.1(b)(i) for additional inventory PGM owned by virtue of CM's failure to open a GE account until December 11, 2014; and

    d. CM denied its obligation under Section 9.2 of the APA to pay half of the attorney's fees that PGM incurred related to drafting and executing the APA.

20. PGM and/or its agents sent detailed written notice of these breaches to CM on multiple occasions in 2015 and 2016, including correspondence dated January 7, 2015, May 16, 2015, July 7, 2015, July 22, 2015, August 6, 2015, September 15, 2015, October 12, 2015, October 14, 2015, November 13, 2015, and February 12, 2016.  Given the number of issues that both parties disputed, the parties agreed in February 2016 to participate in pre-suit mediation.

21. Despite the many detailed written notices sent by PGM and the mediation that took place in September 2016, CM still has not complied with its duties and obligations set forth in the APA and outlined herein.

22. CM's breach of the APA was a substantial factor in PGM incurring damages of at least $13,653.99 and, further, has caused PGM to incur additional costs and fees, including, without limitation, reasonable attorney's fees, for which PGM is entitled to reimbursement pursuant to Section 8.3 of the APA.

## SECOND CLAIM FOR RELIEF
### Civil Theft by Create Music, LLC, Benjamin Garber & Debra Galla

23. Plaintiffs adopt and incorporate herein by reference all of the allegations set forth in the preceding paragraphs.

24. It was the express intention of PGM and CM, as set forth in the language of the APA at Section 1.3 and Exhibit G to the APA, that CM would hold in trust and PGM would retain ownership of certain pianos and accounts receivable after the October 15, 2014 effective date of the APA.

25. Despite the parties' intent and the plain language of the APA, however, the balance(s) due to PGM for sales of at least 3 of the Exhibit G pianos and other receivables specified in Section 1.3 of the APA were either never paid by CM or only partially paid, in contravention of the plain language of Section 6.3 of the APA.

26. In fact, some payments made out to PGM were endorsed and deposited by Garber and Galla into CM's bank account even before the October 15, 2014 effective date of the APA, while both Garber and Galla remained employees of PGM.

27. The accounting records for Billings Piano Gallery were intentionally altered by Galla, at the direction of and/or with the assistance of Garber, in order to remove from the records

before sharing them with PGM certain entries reflecting payments made or due to PGM that were misappropriated by Garber and Galla while they were employees of PGM and rerouted to accounts maintained by CM.

28. PGM also retained the rights to any proceeds from the sale of a number of additional GE-financed pianos pursuant to Section 3.1(b)(i) due to the fact that CM's credit line with GE was not established until December 11, 2014; CM sold at least 5 of those GE pianos after the effective date of the APA but before CM's GE account was opened.

29. Despite CM's non-compliance with the terms of the APA and its plain failure to timely open a credit line with GE, CM failed to inform PGM of the sale of the GE pianos and has to date refused to pay PGM for those same pianos.

30. CM, as the subsequent owner of Billings Piano Gallery, and Garber and Galla as trustee of its accounts receivable, had possession and custody of money that belonged to PGM.

31. Despite multiple requests for payment, CM, Garber, and Galla refused to pay and intentionally retained possession of PGM's money, without PGM's consent, contrary to PGM's authority, and with the intent of converting that money to the use of someone other than PGM.

32. Garber also used a PGM-owned credit card to pay for travel-related expenses when he attended a "Steinway University" course while attempting to ingratiate himself with the Steinway company prior to purchasing the business and assets of Billings Piano Gallery; he did not have permission to use the card and has never reimbursed PGM for this expense.

33. Additionally, CM advertised a closeout sale on October 22-25, 2016, which included a number of the Exhibit G pianos still owned by PGM pursuant to Section 1.3 of the APA, despite the fact that PGM had not consented to such a sale.

34. Garber's unauthorized use of a PGM credit card and CM's attempts to sell property it did not own both amounted to intentional efforts to take, use, transfer or retain possession of movable property without the PGM's consent and to permanently deprive PGM of its property rights.

35. As a direct and proximate result of the thefts committed by CM, Garber, and Galla, PGM has incurred damages of at least $65,638.43, which are subject to trebling and all costs of investigation and litigation pursuant to Wis. Stat. §§ 895.446(3) and 943.20(1)(b).

### THIRD CLAIM FOR RELIEF
### Violations of Wis. Stat. § 100.18 by Create Music, LLC

36. Plaintiffs adopt and incorporate herein by reference all of the allegations set forth in the preceding paragraphs.

37. In October 2015, CM represented Billings Piano would be "Gone Forever" and advertised a "closeout" sale in the newspaper, on its website, and on various social media sites; for example, one of the advertisements CM posted read as follows:

> Billings Piano Company Gone Forever! After 58 years, there will no longer be a Billings Piano Company in Wisconsin. As of October 25, 2015, Billings Piano will cease to exist. As a result the manufacturers and owners will sell off all of the company's piano and keyboard inventory including all grand pianos, baby grands, uprights and digitals at liquidation prices.

38. CM's advertisements were deceptive, because CM (d/b/a Billings Piano) was not, in fact, being liquidated, closing out, or going out of business.

39. Despite advertising that Billings Piano was "gone forever," CM has redirected all web traffic from www.billingspiano.com to CM's new website, https://steinwaymadison.com/.

40. As a direct and proximate result of CM's deceptive advertising, which is prohibited by Wis. Stat. § 100.18(3m), PGM incurred pecuniary losses in an amount to be determined at trial.

41. PGM is also entitled to recover its costs of this civil action, including reasonable attorneys' fees, pursuant to Wis. Stat. § 100.18(11).

### FOURTH CLAIM FOR RELIEF
### Trade Name Infringement by Create Music, LLC

42. Plaintiff adopts and incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

43. PGM granted CM, pursuant to Section 1.2(f) of the APA, an "exclusive, revocable, nontransferable, and limited right and license to use and do business under the service marks 'Piano Gallery Madison', 'Billings Piano', 'www.billingspiano.com', and 'Billings Piano Gallery'" (the "Marks"), which are trade names that the Billings Family and PGM have used and built on for decades.

44. The Marks are inherently distinctive to those in the piano business and Wisconsin music industry, and they have also acquired secondary meaning to the consuming public over time; in essence, the Marks have come to be associated with high quality goods and services and have garnered a significant amount of goodwill over the years.

45. In return for the license granted by PGM as part of the APA, CM acknowledged that PGM retained exclusive ownership of the Marks and that use of the Marks inured to the benefit of PGM.

46. PGM reserved the right to revoke the license and direct CM to cease its use of the Marks in the event that PGM determined that one or more of CM's uses of the Marks was inconsistent with PGM's quality standards, or determined that the quality of any of the goods or services associated with the Marks was inconsistent with maintaining the goodwill inherent in the Marks.

47. PGM experienced a number of problems with Garber, Galla, and CM after the effective date of the APA, including, without limitation, disputes over payments, liabilities, and other obligations as alleged herein, and a general recalcitrance to communicate with PGM about any of the outstanding issues involving the APA and the sale of the business.

48. The foregoing acts and omissions by Garber, Galla, and CM undermined any confidence PGM's had that CM was maintaining the quality standards and goodwill PGM had established for the Marks and caused PGM to doubt CM's ability to deliver the quality services and goods for which the Marks were known.

49. Therefore, consistent with PGM's rights pursuant to Section 1.2(f) of the APA, Grant sent a letter on July 22, 2015 directing that Garber and CM discontinue all use of the Marks no later than August 1, 2015.

50. Despite receiving the cease-and-desist letter, CM has continued to use the Marks without PGM's authority or consent, including, for example, by advertising the Billings Piano closeout sale in October 2015 and by continuing to redirect all web traffic from www.billingspiano.com to CM's current website.

51. CM's unauthorized use of the Marks owned by PGM creates a likelihood of confusion among the consuming public, which understandably but incorrectly assumes that the Marks are licensed by PGM to CM and that consumers can expect to receive the same quality of service and goods that they have associated with the Marks since the time that PGM used them exclusively.

52. PGM is entitled to recover damages in an amount to be determined at trial for loss of goodwill and damage to its business reputation as a result of CM's infringement on the Marks.

## FIFTH CLAIM FOR RELIEF
### Lanham Act Violations by Create Music, LLC

53. Plaintiff adopts and incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

54. CM has used in the course of commerce various words, terms, names and symbols that belong to PGM and falsely designated the origin of certain goods as alleged herein, including, without limitation, by continuing to use the Marks after its license to do so was revoked and by continuing to redirect PGM's web traffic to CM.

55. The actions alleged herein are likely to cause confusion or cause mistake and likely to deceive others in the course of commerce as to the affiliation, connection, and association between the Billings Family and PGM, on the one hand, and CM and its agents and employees, on the other.

56. The actions alleged herein are also likely to deceive others and/or imply that the goods, services, and commercial activities associated with the Marks originated with, or were sponsored or approved by, the Billings Family and PGM rather than by CM and its agents and employees.

57. By operation of 15 U.S.C. 1125(a), therefore, CM must be held liable to PGM for the associated damages they have caused in an amount to be determined at trial.

WHEREFORE, Plaintiff Piano Gallery Madison LLC demands judgment be entered against Defendants Create Music, LLC, Benjamin Garber, and Debra Galla as follows:

a. Compensatory damages of at least $79.292.42, with any additional amounts to be determined at trial;

b. Treble damages for the theft committed by Garber and Galla on behalf of Create Music, LLC;

c.  All costs, fees, and interest permitted pursuant to the applicable law, including reasonable attorneys' fees; and

d.  Any other relief this Court deems equitable and just.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Dated this 18th day of September, 2017.

        LAFFEY, LEITNER & GOODE LLC

By: *s/ John W. Halpin*
Joseph S. Goode
State Bar No. 1020886
John W. Halpin
State Bar No. 1064336
Allison E. Laffey
State Bar No. 1090079
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street, Suite 200
Milwaukee, WI 53202
(414) 312-7003
(414) 755-7089 (facsimile)
jgoode@llgmke.com
jhalpin@llgmke.com
alaffey@llgmke.com

*Attorneys for Plaintiff*