IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PIANO GALLERY MADISON, LLC,

                    Plaintiff,

    v.                                        OPINION & ORDER

CREATE MUSIC, LLC, BENJAMIN GARBER, and        17-cv-713-jdp
DEBRA GALLA,

                    Defendants.

---

Plaintiff Piano Gallery Madison, LLC, (PGM) operated Billings Piano Gallery in Madison, Wisconsin, until 2014. Then PGM's managing member, Grant Billings, moved to Florida and sold the business to defendant Create Music, LLC (CM). PGM alleges that CM and the other defendants failed to perform as they were required to by the asset purchase agreement executed by the parties. So PGM filed a complaint against defendants alleging breach of contract, civil theft, violation of Wisconsin's Deceptive Trade Practices Act, trade name infringement, and violation of the Lanham Act. Dkt. 5.

Defendants move to dismiss several of PGM's claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. 10. The court will grant defendants' motion in part, dismissing PGM's claim under § 100.18.

ALLEGATIONS OF FACT

The court draws the following facts from PGM's complaint, Dkt. 5, and accepts them as true for the purpose of deciding defendants' motion. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

Grant Billings, like his father and grandfather, sells pianos. In 2007, Billings formed PGM, which sold Steinway & Sons pianos at a gallery in Madison, Wisconsin, under the trade name Billings Piano Gallery. Defendant Debra Galla worked as PGM's office manager. Defendant Benjamin Garber was another PGM employee.

In June 2014, Billings decided to move to Florida to run his father's Steinway piano gallery there. He negotiated a sale of the Madison store to Garber. Billings's and Garber's attorneys drafted an asset purchase agreement under which PGM sold its business and assets to CM, a limited liability company of which Garber is the sole member. Billings and Garber executed the agreement, which became effective on October 15, 2014. Galla continued to work as the office manager for CM.

Several terms are significant to the parties' dispute:

- The agreement defines the assets to include the "limited right and license to use and do business under the service marks 'Piano Gallery Madison,' 'Billings Piano," 'www.billingspiano.com,' and 'Billings Piano Gallery.'" *Id.* at 3.

- It specifies that CM's use of PGM's marks "inures to the benefit of" PGM and that if PGM determined that CM's "uses of the Marks is inconsistent with [PGM's] quality standards . . . or . . . with maintaining the goodwill inherent in the Marks," it could require CM to "cease all such disapproved use of the Marks." *Id.*

- The agreement specifically excludes from the purchased assets all proceeds from piano sales under contract or purchase order as of the effective date.

- In the agreement, CM agrees to pay PGM in part by obtaining a release of PGM's and Billings's obligations to GE Capital for 28 pianos called the "floor plan inventory." The agreement specifies that CM was to obtain the release by October 24 and until it did so, "title to the [floor plan] inventory . . . remains with [PGM] a[nd] any proceeds of sales from any such

inventory shall be turned over to [PGM] immediately upon receipt by [CM]." *Id.* at 8.

- The parties agreed to pay half of the "fees and expenses incurred . . . in connection with . . . the execution, delivery and performance" of the agreement, including attorney fees. *Id.* at 15.

PGM alleges that CM did not abide by the terms of the agreement. It did not pay half of "the fees that PGM incurred related to drafting and executing the" agreement. Dkt. 5, at 5. It did not obtain the GE release until December 11. Both before and after the effective date of the agreement, Garber and Galla retained payments for pianos that, under the terms of the agreement, should have been given to PGM. They altered accounting records to hide these missing payments. Billings also discovered that before the effective date of the agreement, Garber used a PGM credit card without permission. PGM complained to CM about these things multiple times. In July 2015, Billings directed CM to cease all use of the marks licensed in the agreement by August 1, 2015. CM did not do so.

ANALYSIS

Defendants move to dismiss PGM's claims of civil theft, deceptive trade practices, trade name infringement, and Lanham Act violations. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a plausible claim for relief, that is, facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is not bound to accept alleged legal conclusions. *Id.* at 827.

PGM "concedes that [it] lacks standing to pursue" a deceptive trade practices claim and "stipulates it will not seek relief under Wis. Stat. § 100.18." Dkt. 12, at 1 n.1. So the court will grant defendants' motion to dismiss this claim.

## A. Civil theft

PGM alleges defendants committed civil theft in violation of Wis. Stat. §§ 895.446(3) and 943.20(1)(b) when they (1) retained payments made to PGM before the agreement's effective date; (2) retained proceeds from floor-plan-inventory pianos sold before they obtained the GE release; (3) retained proceeds from piano sales under contract or purchase order as of the effective date; (4) used a PGM credit card without permission. Section 943.20(1)(b) provides that an individual commits civil theft when he or she

> [b]y virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money . . . , intentionally uses, transfers, conceals, or retains possession of such money . . . without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner.

By its terms, the civil theft statute would apply to the allegations in the complaint. But defendants argue that PGM's civil theft claim is barred by the economic loss doctrine. Wisconsin's economic loss doctrine prevents a plaintiff from claiming tort damages for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233. Wisconsin courts have consistently held that the economic loss doctrine does not bar statutory claims, including civil theft claims. *See Ferris v. Location 3 Corp.*, 2011 WI App 134, ¶¶ 12–13, 337 Wis. 2d 155, 804 N.W.2d 822; *H.A. Friend & Co. v. Prof. Stationery, Inc.*, 2006 WI App 141, ¶¶ 14–17, 294 Wis. 2d 754, 720 N.W.2d 96. So the economic loss doctrine does not apply here.

4

Defendants also argue that § 943.20(1)(b) applies only to "trustee-like" perpetrators, citing the court's recent decision in *Wisconsin Masons Health Care Fund v. Sid's Sealants, LLC*, No. 17-cv-28, 2017 WL 3835343, at *2 (W.D. Wis. Aug. 31, 2017). It's true that § 943.20(1)(b) "targets 'those who are entrusted with the property of another and who retain or use that property in a way that does not comport with the owner's wishes.'" *Id.* (quoting *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 893 (W.D. Wis. 2006)). But that's exactly the situation alleged here: CM agreed to keep pianos associated with sales under contract or purchase order in the gallery and maintain insurance on them and to send the sales proceeds to PGM. Likewise, CM agreed to send to PGM the sales proceeds from any floor-plan-inventory pianos sold before CM obtained the GE release. As for acts of civil theft alleged to have occurred before the agreement's effective date, Garber and Galla were PGM's employees—precisely the kind of relationship contemplated in § 943.20(1)(b). So the court will not dismiss PGM's civil theft claim.

## B. Trade name and trademark infringement

PGM alleges that CM infringed its trade names, in violation of Wisconsin common law, and its trademarks, in violation of the Lanham Act, 15 U.S.C. § 1125(a), by using the marks licensed in the agreement after PGM ordered it to cease, as allowed by the agreement.

To state claims for trade name and trademark infringement, PGM must allege, among other things, that CM's use of a mark is likely to cause confusion among consumers. *See First Wis. Nat'l Bank of Milwaukee v. Wichman*, 85 Wis. 2d 54, 270 N.W.2d 168, 172–73 (1978); 15 U.S.C. § 1125(a). Defendants contend that "there is simply no likelihood of confusion here," therefore PGM fails to state infringement claims. Dkt. 11, at 8. But likelihood of confusion is a question of fact. *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 436 (7th Cir.

1999). "In determining whether a likelihood of confusion exists, [courts] consider[] seven factors, weighing their relative importance on a case-by-case basis." *Id.* PGM alleges that CM used PGM's exact marks in the same location and for the same products that PGM used the marks. Those allegations fulfill several factors, and they are sufficient at the pleading stage. A deeper analysis of likelihood of confusion must wait until the facts are developed.

Defendants also argue that PGM could not revoke the license to use the marks under the terms of the agreement, and therefore CM could not have infringed these marks. It's hard to see how CM could be entitled to continued use of the licensed marks if it is in breach of the agreement. But the parties' arguments on this issue are underdeveloped, and the terms of the agreement concerning the termination of the license are not entirely clear. Defendants concede that this may be "an issue for another day," Dkt. 11, at 7, and the court agrees. So the court will not dismiss PGM's trade name and trademark infringement claims.

ORDER

IT IS ORDERED that defendants Create Music, LLC, Benjamin Garber, and Debra Galla's motion to dismiss, Dkt. 10, is GRANTED in part. Plaintiff Piano Gallery Madison, LLC's claim under Wis. Stat. § 100.18 is DISMISSED with prejudice.

Entered February 6, 2018.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge